OPINION of the Court, by
Ch. J. ÉDwAitbs.-⅛
The appellee was complainant in the circuit court of Fayette county; his entry is of prior date to those against which he contends, but his patent issued subsequent to those of his adversaries ; therefore, the-first question requiring the consideration of the court, is whether his entry is a valid one ; for if so, it will hold all the lánd which it properly appropriates ; if otherwise, he will hold none.
The entry under which he claims is in the following words, viz: “John Payne enters 1200 acres, upon a treasury warrant, on the waters of Silver creek, about two miles northwest of the Blue Licks, beginning at á clay lick, about one mile east of the creek, and to run towards the creek, and down it for quantity.”
It is obvious that some of the calls in this entry are given as general description to guide and direct subsequent locators to those which are locative. In such general description, mathematical certainty or precision, either with regard to courses or distances called for, has never been required, nor wowld it be reasonable or just to require it, as it could not be presumed or inferred, from calls of this nature, that the chain and compass *65 fed actually been used in ascertaining their correctness ; no more certainty ought to be required, than that which might reasonably be expected, a man acquainted with the situation of the objects referred to, might be able to give without the aid of either chain or compass.
Clay Lick about one mile east of the creek, to run towards the creek, &. down it for quantity 5 Lick, not mislead ing. beginning at a twoBiueLicks: °”e Lick the call for Blue Licks, ’Tní*faJ fluf
The northweft courfe from the Blue Lick? paffing through a clay Lick, na ⅛ neighborhood ; the diftance tile Bi“e corresponding, and from the cr”k but ao poles over a ,⅛, clay Lick. could, j,y reaf0e™ abie diligence, and identified,
e^ow iutvey'
The general description to ^k ⅛'0(.01^ g0vem the fur-vey after the beginning .** found — Black w. Batts,paif South vs. Botuks, Pr- Dec'
Whenever the general description is sufficient to enable a subsequent enquirer, with reasonable diligence, to find the object to which it is designed to lead him, it is sufficient. The calls of this entry, which amount only to general description, are those which describe the land as lying about two miles northwest of the Blue Ticks, and the Clay Lick, claimed as the beginning, as lying about one mile east of Silver creek. If this description will lead to the Clay Lick, mentioned in the entry, all the purposes for which it was intended, will be attained. To ascertain this, the identity and notoriety of the Blue Licks, is first necessary to be considered, and next the course and distance from thence to the Clay Lick.
_ Two licks are exhibited on the connected plat, a lit-tie more than one mile apart, both of which are proved to have been called the Blue Licks ; on this subject, however, there is very considerable contrariety ot testimony. On the part of the complainant, there is a great preponderance, that one of these Licks was notoriously 1 * . , , ... „ T , T . , . . , J called by the appellation of Joes Lick, and the other by that of the Blue Lick ; and some of the witnesses expressly prove, that the latter was called the Blue Licks, and that there were several licking places in it, in distinct valley’s ; others consider it as having so exclusively appropriated to itself, the name of the Blue Lick, that if they bad been enquired of for the Blue Licks in the vicinity of Silver creek, they would not have hesitated to have pointed it out as the one enquired for. The witnesses on the part of the defendant, do not speak of Joe’s Lick, and the Blue Lick, as being notoriously called the Blue Licks, at the date of the appel-J ' , lee s entry ; some ot them profess onlyto have become acquainted with them, several years subsequent thereto, and the others all speak of their knowledge of them anterior to the entry. Bridges says they were so called,' in 1775, by the hunters of his company, who camped near them. Whitsell states, that he encamped near them two nights and one day, being sick there, and *66 that they were called tbe Blue Licks. Lawrence Thompson says he was acquainted with the licks in 1775, and since ; that when spoken of together, they wette called the Blue Licks, and separately, Boone’s Blue Lick, and Joe’s Blue Lick ; but whether he knew by what appellation they were called in 5 80, does not appear, and he does not state that they were at any time notorious by any name whatever. Stoner says, in ’74 he was at them, and was told by Wm. Ward, that the licks were called the Blue Licks, and that one was called Boone’s Lick, and the other Joe’s Lick ; and in ’75, Boone told him they were the Blue Licks. This is all the testimony on the partof the appellants, offered on this branch of the subject, that can deserve the least consideration. And it certainly is not sufficient, to countervail the strong proof offered on the part of the ap-pellee, if it had been sufficiently pointed as to the notoriety of the name it establishes, and had applied to the date of the entry. It is probable, that among some of those persons who on each side appear to have been somewhat itinerant, that those places might have been called by different names, at different times, and by different companies ; but it is clear, that the lick designated as the Blue Lick, on the connected plat, might from its notoriety be emphatically called the Blue Lick, in exclusion of any other. This then being the Blue Lic.k, and the course from thence to the beginning of the entry being precisely that which is called for, and the distance not unreasonably erroneous, but nearly corresponding with the call, it is thought by the court, that the call for the Blue Licks, instead of Blue Lick, could not be sufficient to justify its rejection; that it was not calculated to mislead, but to inform. If, therefore, the court is right in these premises, the beginning of the entry could easily be found.
But if the case were as the appellants have labored to prove it, the call being only of general description, would be supported as sufficiently descriptive to have enabled a subsequent locator to have found the land, provided the other calls of the entry are correct. If both Joe’s, and the Blue Lick, would have been understood as the Blue Licks, and a point of departure were taken from a centre between them a due northwest course, would run through the body of the land which is. called *67 to lie northwest of them, and the distance as nearly corresponding with the calls, as ought to be expected ; a course to the Clay Lick called for, would be a northwest course, and not very different from due northwest. If a due northwest line were drawn from either lick, it is believed by us that it would run through some part of the land ; therefore, the body of the land is well described by the call, to lie about two miles northwest of the Blue Licks ; and with this aid, it is thought it would not have been difficult to have found the Clay Lick, which is described to lie about one mile east of the creek. By reversing the course, and going to the creek, it would be found to be only about twenty poles more than one mile. Thus it appears, that a locator might with reasonable exertions, have found the lick called for, and when found, he would have known it, from its relative situation to other objects, and there not being any other that would have answered the description in its vicinity, that could have led him astray.
The next enquiry is, how ought this entry to be surveyed ? in deciding which, that description which has been employed to identify the beginning, can have no influence, because it is not locative in its nature : the en - try must therefore have the same construction, as if it were a call to run towards the creek, from a Clay Lick, (whose notoriety or identity was unquestioned) this being the case, the court is of opinion, aline should be run from the beginning to the nearest point on the creek, thence down the creek so far as that a line from the be» gining, parallel to that part of the creek to be occupied by the survey, and one from the creek, intersecting each other at right angles, would include the quantity ; and this being contrary to the decree of the circuit court, the said decree is hereby annulled and reversed, and the said circuit court are hereby directed to enter a decree for the appellee, conformable to the principles contained in this opinion, and to do whatever else equity may require.